UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JERMEL MANGUM,

                          Plaintiff,

        - against -

CITY OF NEW YORK, POLICE OFFICER MOURAD
ARSLANBECK, Tax No. 937999, individually and in his
official capacity, POLICE OFFICER DAVID PORRAS,
Tax No. 939244, individually and in his official capacity,
NEW YORK COUNTY DISTRICT ATTORNEY CYRUS
R. VANCE, individually and in his official capacity, and
ASSISTANT DISTRICT ATTORNEY NICHOLAS
CONNOR, individually and in his official capacity,

                          Defendants.
------------------------------------------------------------------------X

15 CV 8810 (PAE)

**VERIFIED AMENDED
COMPLAINT**

Jury Trial Demanded

        Plaintiff, JERMEL MANGUM, by his attorneys, HELD & HINES, LLP, complaining of

the defendants, hereinafter states and alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

        1.      Plaintiff commences this action pursuant to 42 U.S.C. §1983 *et seq.*, seeking

damages against the defendants and their employees for their unlawful racial profiling,

harassment, stopping, frisking, detaining, searching, falsely arresting and imprisoning, and

malicious prosecution of Plaintiff on January 26, 2012, as well as Monell claims for

unconstitutional, deliberate and/or de facto practices, policies, procedures and/or customs that

resulted in violations of the Plaintiff's civil and constitutional rights.

        2.      Plaintiff also asserts supplemental state law claims for violations of his rights

secured by the Constitution of the State of New York, as well as Article 15 of the New York

State Executive Law ("NYS Human Rights Law"), Section 40 *et seq.* of the New York State

Civil Rights Law (the "NYS Civil Rights Law"), and Sections 8-107 *et seq.*, 8-502 *et seq.* and 8-

603 *et seq*. of the Administrative Code of the City of New York (the "City Human Rights Law"), as well as common law claims of (a) assault, battery, false arrest, false imprisonment and malicious prosecution, and conspiracy to commit same, (b) negligent screening, hiring, training, supervision and retention, (c) negligence, and (d) failure to protect.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988; the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America; the Constitution of the State of New York; the NYS Human Rights Law; the NYS Civil Rights Law; the City Human Rights Law; and the Charter and Administrative Code of the City of New York.

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

5.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

6.      Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f) for pendent claims arising under New York state and local law.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within New York County, New York, which is within this judicial district.

## PARTIES

11.     At all times mentioned herein, Plaintiff was and remains a resident of the City and State of New York, County of New York.

12.     Defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the City and State of New York.

13.     The City maintains the New York City Police Department (the "NYPD") and Department of Correction ("DOC") pursuant to law.

14.     At all times mentioned herein, Police Officer Mourad Arslanbeck ("P.O. Arslanbeck") and Police Officer David Porras ("P.O. Porras), were members of service of the NYPD, endowed and bestowed with rank and appointment upon them by the City and/or NYPD, and acting under color of law. P.O. Arslanbeck and P.O. Porras (collectively referred to as the "defendant police officers") are sued individually and in their official capacities.

15.     Defendant, Cyrus R. Vance ("Vance"), was at all relevant times the duly elected New York County District Attorney. As such, he is the highest supervisory official at the New York County District Attorney's Office ("DANY") and is responsible for the training and supervision of DANY's employee, including but not limited to its prosecutors and investigatory staff. He is also responsible for enacting, promulgating and enforcing the regulations and policies of DANY and for ensuring that DANY employees obey, employ, and implement these regulations and policies. At all relevant times, Vance was acting under color of law. Vance is sued individually and in his official capacity.

16.     At all times mentioned herein, Defendant, Nicholas Connor ("ADA Connor"), was an Assistant District Attorney at DANY and acting under color of law. At all relevant times,

ADA Connor was acting in his capacity as an agent, servant, and employee of the defendant DANY. He is sued individually and in his official capacities.

17.     At all times mentioned herein, the defendants were acting under the color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

18.     At all times mentioned herein, the City and DANY, their departments, agents, servants and employees, were charged with screening, hiring, training, retaining, directing, supervising, investigating, disciplining, overseeing, appointing and promoting its police officers and prosecutors, their supervisors and staff in their employ, including but not limited to the defendants named herein.

19.     That upon information and belief, and at all times mentioned herein, the defendant police officers were acting under the direction, supervision, authority and control of the City.

20.     That upon information and belief, and at all times mentioned herein, ADA Connor was acting under the direction, supervision, authority and control of Vance.

21.     At all times mentioned herein, NYPD and DANY supervisory personnel had direct, first-line supervisory responsibilities over the defendant police officers and ADA Connor, including responsibility for taking appropriate measures to ensure and protect the civil rights and personal safety of members of the public in general and Plaintiff in particular. These responsibilities were required to be carried out in a manner consistent with the law, including mandates, directives and orders concerning racial profiling, stop and frisk, reasonable suspicion, probable cause, Terry stops, Mapp/Dunaway/Huntley hearings, Debour/Hollman quantum of suspicion, and reporting and investigation of abuses of authority by staff and supervisors. Each of these presently unidentified supervisors is sued in his/her individual and official capacities.

22.     The defendant police officers racially profiled, harassed, intimidated, stopped, frisked, searched and arrested Plaintiff; assaulted and battered Plaintiff; falsely detained and imprisoned Plaintiff; made false criminal allegations against the plaintiff; maliciously prosecuted; maliciously abused process against Plaintiff; denied Plaintiff's right to a fair trial; conspired with Defendants Vance and ADA Connor for that purpose; knowingly drafted and/or filed, or conspired to file, false reports against Plaintiff; and gave knowingly false statements or testimony in or for a criminal proceeding initiated against Plaintiff.

23.     Vance and ADA Connor maliciously prosecuted Plaintiff; maliciously abused process against Plaintiff; denied Plaintiff a fair trial; caused Plaintiff to be arraigned and indicted on unlawfully recovered statements and physical evidence; conspired with the defendant police officers to maliciously prosecute Plaintiff; knowingly drafted and/or filed, or conspired to file, false reports against Plaintiff; vouched for and relied upon knowingly false statements and testimony; and relied upon and utilized unlawfully obtained statements and evidence in a criminal proceeding they initiated against Plaintiff.

## STATEMENT OF FACTS

28.     On or about January 26, 2012, the plaintiff, a black male, was walking in front of the Baruch Houses, a public housing development located at or near 75 Baruch Drive, New York, New York, with his younger brother and his brother's friend, both of whom are also black males. These three men were not loud, obstructive, causing mischief, or involved in any other conduct that would raise police suspicions other than for the fact that they were young black males walking together in the vicinity of a public housing project at night.

29.     The defendant police officers unlawfully targeted, racially profiled, stopped, detained, and frisked Plaintiff, his brother, and his brother's friend. At the time the defendant

police officers ordered these men to stop, they had not violated any laws, were not doing anything suspicious or illegal, and had no contraband in plain view. At the time the defendant police officers ordered these men to stop, the officers did not harbor or formulate any intent to arrest any of them for littering or any other violation or crime.

30.     To justify their initial police action, the defendant police officers would later falsely report and testify that they witnessed Plaintiff discard a Styrofoam cup on the ground. Neither Plaintiff nor the other two men were carrying Styrofoam cups at the time and, therefore, none of them could have littered. No Styrofoam cup was recovered at the scene of the arrest nor was any cup vouchered into evidence by the police.

31.     The defendant police officers did not issue a summons to anyone for any offense (including but not limited to littering) nor did the defendant police officers pursue any line of questioning regarding the purportedly discarded cup or littering.

32.     Rather, the defendant police officers asked Plaintiff where he was coming from and going, and then immediately began to question him about a closed backpack he was wearing, stating, "What's in the bag?", to which Plaintiff responded, "Books." The defendant police officers then pat frisked Plaintiff.

33.     The defendant police officers did not have an objective credible reason to approach and request information from Plaintiff at the time they stopped, detained, and frisked Plaintiff. The defendant police officers did not have founded suspicion of criminality at the time they stopped, detained, and frisked Plaintiff. The defendant police officers did not have reasonable suspicion of a crime at the time they stopped, detained, and frisked Plaintiff. The defendant police officers did not have probable cause to arrest at the time they stopped, detained,

and frisked Plaintiff. The defendant police officers did not know the requisite degree of police suspicion for their actions in the instance.

34.     After pat frisking Plaintiff, Defendant P.O. Porras seized Plaintiff's backpack, unzipped it, opened it, and searched inside. No arrest had been made at the time, the defendant police officers did not have a search warrant, there was no exigency, and Plaintiff did not consent to the search.

35.     The defendant police officers did not have founded suspicion of criminality at the time they detained Plaintiff and searched his backpack. The defendant police officers did not have reasonable suspicion that Plaintiff had committed a crime or that he was armed or dangerous at the time they detained him and searched his backpack. The defendant police officers did not have probable cause to arrest at the time they detained Plaintiff and searched his backpack. The defendant police officers did not have a warrant at the time they detained Plaintiff and searched his backpack. The defendant police officers did not know that they were required to obtain a warrant prior to searching Plaintiff's closed backpack. The defendant police officers did not know the requisite degree of police suspicion for their actions in the instance.

36.     To justify their unconstitutional search of Plaintiff's backpack, the defendant police officers would later falsely report and testify that Defendant P.O. Arslanbeck asked Plaintiff to put the backpack on the ground and he complied, and that Defendant P.O. Porras later picked up the backpack and, in doing so, felt what he believed to be the barrel of a gun so he opened the backpack and searched inside.

37.     P.O. Porras unlawfully and purposefully physically manipulated Plaintiff's closed backpack without reasonable suspicion. Then, upon P.O. Porras performing a warrantless and unjustified search of Plaintiff's closed backpack, he discovered a firearm and ammunition.

38.     The defendant police officers then tackled Plaintiff to the ground, handcuffed him, and placed him under arrest.

39.     The defendant police officers did not have lawful authority to seize, frisk and search Plaintiff, his person, and his closed backpack as littering is a non-criminal offense under N.Y.C. Administrative Code §16-118.

40.     The defendant police officers did not have lawful authority to seize, frisk and search Plaintiff, his person, and his closed backpack as no arrest had been made and there was no exigency or consent.

41.     The defendant police officers did not have lawful authority to seize, frisk and search Plaintiff, his person, and his closed backpack as they did not have concerns that evidence would be destroyed, or that officer safety was an issue, as Plaintiff was handcuffed and gave innocuous and non-suspicious responses to the defendant police officers' questions.

42.     Plaintiff was not given his *Miranda* warnings at the scene of the arrest.

43.     While P.O. Porras and Officer Hernandez, a backup officer who responded to the scene of the arrest, were transporting Plaintiff to the stationhouse, said officers began a custodial interrogation of Plaintiff, questioning him as to where he obtained the firearm. P.O. Porras and Officer Hernandez failed to *Mirandize* the plaintiff prior to questioning him. Once at the stationhouse, the custodial interrogation continued as to this topic with Detective Raab, his partner, and P.O. Arslanbeck, and then continued later that day at the district attorney's office with ADA Connor and P.O. Arslanbeck.

44.     While at the stationhouse, the defendant police officers processed Plaintiff's arrest, which included unlawfully subjecting Plaintiff to a warrantless strip search. The police did not have a warrant, consent, probable cause, or an individualized reasonable suspicion that

Plaintiff was concealing weapons, drugs, or other contraband underneath his clothing or in his body cavities. During this unlawful strip search, narcotics were recovered from Plaintiff's underwear.

45.     On January 27, 2012, Plaintiff was arraigned in Criminal Court, New York County. Plaintiff was not charged or cited for littering. Plaintiff was indicted and then arraigned in Supreme Court, New York County, on March 8, 2012, on charges of criminal possession of a weapon in the second degree (N.Y.P.L. §§265.03 and 265.03(1)(b)), a C felony, and criminal possession of a controlled substance in the third degree (N.Y.P.L. §220.16), a B felony.

46.     Despite having notice and knowledge that there was no legal basis to justify the defendant police officers' stop, detention, arrest, and/or search Plaintiff's person, clothing and closed backpack, Defendants DA Vance and ADA Connor arraigned Plaintiff, presented Plaintiff's arrest to a grand jury, sought an indictment of Plaintiff on criminal charges they knew or should have known they could not lawfully substantiate and/or prove beyond a reasonable doubt, maliciously prosecuted Plaintiff, relied on statements and physical evidence unlawfully obtained from the plaintiff, and prosecuted Plaintiff until he was convicted.

47.     The defendant police officers and ADA Connor, acting in conspiracy and accord, denied Plaintiff a fair trial, maliciously prosecuted Plaintiff, and maliciously abused process against Plaintiff.

48.     Plaintiff was unlawfully confined to the custody and control of the New York City Department of Correction from his arraignment through sentencing, and for some days thereafter.

49.     Plaintiff moved the trial court to suppress all statements made by Plaintiff and all physical evidence obtained from the subsequent search of his person and backpack, asserting that

the defendant police officers lacked reasonable suspicion to stop Plaintiff and, therefore, the statements and physical evidence were obtained in contravention of his Fourth Amendment rights.

50.     By Order of the Hon. Carol Berkman, J.S.C., dated August 13, 2012, all statements provided by the plaintiff in the police car, stationhouse and the district attorney's office were suppressed as same were unlawfully obtained by the defendants herein. In suppressing these statements, Justice Berkman ruled that "[p]articularly given the police car conversation was totally unnecessary and inadvisable, even if not an intentional subversion of defendant's rights (cf., Missouri v. Seibert, 542 U.S. 600 [2004] [question first, warn later as a technique]), as a factual matter, the mere change of personnel and location did not break the chain of events where all of the questioning was on the simple topic of the source and possession of a firearm (as well as the drugs) and too little is known of defendant's treatment and condition between each encounter with a questioner. Compare People v. Paulman, 5 N.Y.3d 122 (2005) with People v. Bethea, 67 N.Y.2d 364 (1986)." Despite holding that the defendant police officers did not have reasonable suspicion to stop Plaintiff and frisk his backpack, Justice Berkman denied Plaintiff's motion to suppress statements he made at the scene and the physical evidence obtained during the search of his person and backpack.

51.     On or about September 20, 2012, Plaintiff was convicted, after a guilty plea, of criminal possession of a weapon in the second degree (P.L. §265.03) and criminal possession of a controlled substance in the third degree (P.L. §220.16) and was sentenced to five years' imprisonment to be followed by five years' post-release supervision. Plaintiff accepted the plea bargain as he believed he would not be acquitted or convicted of a lesser charge given Justice Berkman's denial of his motion to suppress his statement at the scene and the physical evidence

obtained during the defendant police officers' unconstitutional search of his person and backpack. Plaintiff accepted the plea bargain so that he could immediately appeal his conviction.

52.     Five days after his sentencing, on or about September 25, 2012, Plaintiff filed an appeal to the Appellate Division of the Supreme Court of the State of New York, First Department, challenging his conviction.

53.     On or about October 1, 2012, Plaintiff was transferred to the custody and control of the New York State Department of Corrections and Community Supervision to serve the remainder of his sentence.

54.     On February 3, 2015, the Appellate Division, First Department, dismissed the indictment against Plaintiff in its entirety, holding that "[t]he trial court found that the officers otherwise lacked reasonable suspicion to stop defendant, a conclusion that the People do not contest on appeal. Consequently, the evidence obtained from defendant's backpack and from the subsequent search at the precinct should have been suppressed." People v. Magnum, 125 A.D.3d 401 (1st Dept. 2015) (emphasis supplied).

55.     Plaintiff was released from prison on February 3, 2015. All told, Plaintiff was and remained falsely imprisoned for 3 years and 9 days[1] – from January 26, 2012 through February 3, 2015. During this period of unlawful incarceration, Plaintiff was subjected to cruel and unusual punishment, threats of physical violence, and repeated strip searches.

56.     At no time during the foregoing incidents did any of the defendants intervene, protect, or come to the aid or defense of Plaintiff.

57.     The aforesaid conduct, all undertaken while the defendants were acting under the color of law, was without legal cause or justification.

---

[1] Plaintiff was imprisoned by the New York City Department of Correction for approximately 249 days and the New York State Department of Correction and Community Supervision for approximately 855 days.

58.     The defendants' aforesaid conduct constitutes gratuitous, unjustified and excessive punishment and abuse of authority.

59.     As a matter of law, the defendant police officers did not have reasonable suspicion to stop Plaintiff and frisk his backpack and, therefore acted in contravention of the Fourth Amendment.

60.     As a matter of law, the defendant police officers did not have probable cause to arrest Plaintiff and, therefore acted in contravention of the Fourth Amendment.

61.     As a matter of law, the defendant police officers did not have the lawful right to question Plaintiff and, therefore acted in contravention of the Fourth Amendment.

62.     As a matter of law, the defendant police officers did not have the lawful right to search Plaintiff's backpack and, therefore acted in contravention of the Fourth Amendment.

63.     As a matter of law, the defendant police officers' conduct violated Plaintiff's clearly established constitutional rights.

64.     As a matter of law, it was not objectively reasonable for the defendant police officers to believe that their conduct did not violate Plaintiff's constitutional rights.

65.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to initiate a police stop based upon race.

66.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to initiate a police stop and frisk absent reasonable suspicion of criminal wrongdoing.

67.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to initiate legal process and prosecute without probable cause.

68.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to strip search a detainee without a particularized reasonable suspicion.

69.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to question an arrestee prior to issuing the *Miranda* warnings and the arrestee waiving the right to counsel.

70.     It was clearly established law on the date of Plaintiff's arrest that it is unlawful and a violation of an individual's constitutional rights for a government official to search an individual's property without a warrant, exigency or consent.

71.     As a matter of law, DA Vance and ADA Connor did not have probable cause to prosecute Plaintiff.

72.     As a matter of law, DA Vance and ADA Connor did not have lawfully obtained statements and physical evidence with which to prosecute Plaintiff.

73.     DA Vance's personal failure to take corrective action and to implement meaningful procedures and training to prevent the unconstitutional conduct by his prosecutors against citizens led to the constitutional violations suffered by Plaintiff herein.

74.     DA Vance and ADA Connor's conduct was not in good faith nor premised upon a reasonable belief that they could secure a conviction at trial, but, rather, was entirely predicated upon an unlawful arrest of Plaintiff and statements and physical evidence unlawfully obtained therefrom.

75.     As a result of the foregoing, Plaintiff was denied his right to a fair trial.

76.     As a result of the foregoing, Plaintiff was caused to sustain physical, psychological and emotional injuries, pain and suffering, loss of liberty, loss of familial relations, disability from his usual activities, pecuniary loss, deprivation and violation of his due process and civil rights, liberties, privileges, and immunities, shame, and humiliation.

## FIRST CLAIM FOR RELIEF:
## 42 U.S.C. §1983 CLAIMS AGAINST
## POLICE OFFICERS MOURAD ARSLANBECK AND DAVID PORRAS

77.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "76", inclusive, of this Complaint, as if same were fully set forth herein at length.

78.     As set forth above, the defendant police officers, acting under the color of law, violated Plaintiff's clearly established constitutional rights in that they (a) knowingly targeted, racially-profiled, stopped, detained, frisked, searched, arrested, imprisoned, interrogated, and prosecuted Plaintiff without legal cause or justification; (b) maliciously prosecuted Plaintiff; (c) maliciously abused process against Plaintiff; (c) denied Plaintiff equal protection of the law; (d) abused and misused their authority; (e) conspired with prosecutors to maliciously initiate legal process and prosecute Plaintiff and otherwise violate his civil rights; (f) knowingly arrested, imprisoned and commenced criminal process against Plaintiff based upon statements and physical evidence unlawfully obtained from Plaintiff; (g) knowingly provided false statements and reports against Plaintiff, including but not limited to claiming that Plaintiff had littered and was stopped for littering; (h) denied Plaintiff due process of law and a fair trial; and (i) covered up and/or lied to the Court and/or prosecutors about the actual reason they stopped Plaintiff and how it came to be that they frisked and searched his person and backpack.

79.     The defendant police officers acted with deliberate indifference to the plaintiff's clearly established rights.

80.     The defendant police officers knew they had duties, under the U.S. Constitution as well as the laws and regulations of the State and City of New York, (a) to not target and profile Plaintiff based upon his race; (b) to make truthful statements in their official reports and testimony; (c) to truthfully and fully disclose to prosecutors and the Court the circumstances of their stop, detention, frisk, search, arrest, and interrogation of Plaintiff; (d) to not stop Plaintiff absent reasonable suspicion; (e) to not arrest Plaintiff absent probable cause; (f) to not search Plaintiff and his property absent a search warrant, consent or exigency; (g) to not conduct a strip search or Plaintiff as part of a blanket policy and absent an individualized suspicion; (h) to not begin a custodial interrogation without advising Plaintiff of his *Miranda* rights; (i) to disclose information and facts to investigators, supervisors, prosecutors and the Court so that the prosecution and conviction of Plaintiff would not be based upon false, misleading or incomplete evidence and arguments; and (i) to affirmatively act so as not to cause or continue Plaintiff to be unconstitutionally racially-profiled, stopped, detained, frisked, searched, arrested, imprisoned, interrogated, prosecuted, convicted, and suffer resultant injuries.

81.     Notwithstanding their awareness of their duties, the defendant police officers, prior to, during, and following their stop of Plaintiff, intentionally, recklessly and/or with deliberate indifference to their legal obligations, concealed, lied about and otherwise failed to disclose the actual reason they stopped Plaintiff and the circumstances by which they searched his backpack.

82.     Notwithstanding their awareness of their duties, the defendant police officers, following their arrest of Plaintiff, intentionally, recklessly and/or with deliberate indifference to

their legal obligations, created a false narrative of what actually occurred to render an unwarranted stop and search into an arrest based on probable cause.

83.     As a direct and proximate result of the defendant police officers' deliberate indifference, Plaintiff suffered the consequences and damages aforesaid.

84.     As set forth above, the defendant police officers have made every effort to conceal the truth about the circumstances that lead to Plaintiff's arrest and what actually occurred thereafter, including but not limited to submitting false reports, providing inaccurate, incomplete and/or untruthful written statements, and providing inaccurate, incomplete and/or untruthful testimony in court proceedings.

85.     The aforesaid acts and omissions violated the plaintiff's clearly established rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and were the direct and proximate cause of the damages he suffered.

86.     The actions of the defendant police officers were purposeful, malicious, and in bad faith.

87.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1988.

### SECOND CLAIM FOR RELIEF:
### 42 U.S.C. §1983 CLAIMS AGAINST DISTRICT ATTORNEY CYRUS VANCE and ASSISTANT DISTRICT ATTORNEY NICHOLAS CONNOR

88.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "87", inclusive, of this Complaint, as if same were fully set forth herein at length.

89.     As set forth above, ADA Connor, acting under the color of law, violated Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights in that he (a) caused Plaintiff to

be interrogated, arraigned, indicted, prosecuted and imprisoned without legal cause or justification; (b) abused and misused his authority; (c) failed to *Mirandize* Plaintiff; (d) deprived Plaintiff of a fair trial; (e) maliciously prosecuted Plaintiff and conspired with the NYPD and defendant police officers for that purpose and to otherwise violate Plaintiff's civil rights; (f) maliciously abused process against Plaintiff in order to secure a conviction despite being aware that the subject arrest and search was in violation of the Fourth Amendment; (g) conspired with the defendant police officers to interrogate, arraign, indict, prosecute and imprison Plaintiff out of their own personal interest; (h) knowingly prosecuted Plaintiff based upon statements and physical evidence unlawfully obtained; and (i) knowingly provided false statements and reports against Plaintiff in an effort to prevent the truth from coming to light, all with purposeful intent to harm to Plaintiff.

90.    ADA Connor and District Attorney Vance, together with Vance's subordinate Bureau Chiefs (i.e., ADA Connor's supervisors), were aware that the defendant police officers performed a warrantless search of Plaintiff's person and property at a time they had neither probable cause to arrest Plaintiff nor reasonable suspicion that Plaintiff was involved in criminal activity. These defendants were also aware that the defendant police officers did not perform said searches incident to a lawful arrest, or to protect officer safety, or to preserve evidence.

91.    District Attorney Vance, together with Vance's subordinate Bureau Chiefs (i.e., ADA Connor's supervisors), were aware that ADA Connor was going to and did arraign Plaintiff, seek an indictment from the Grand Jury, and prosecute Plaintiff based upon an unlawful arrest and statements and physical evidence obtained from Plaintiff, and consciously chose to ignore these unconstitutional actions and denials of Plaintiff's right to a fair trial.

92.     These defendants acted with deliberate indifference to the plaintiff's clearly established rights.

93.     As a direct and proximate result of these defendants deliberate indifference, Plaintiff suffered the damages aforesaid.

94.     As set forth above, these defendants have made every effort to conceal the truth about the circumstances that lead to Plaintiff's stop, search and arrest, including but not limited to improperly vouching before the criminal court for the defendant police officers' false narrative of what actually occurred in an effort to render an unlawful stop and search into an arrest and search based on probable cause.

95.     The aforesaid acts and omissions violated the plaintiff's clearly established rights under the First, Fourth, Fifth,  and Fourteenth Amendments of the United States Constitution and were the direct and proximate cause of the damages he suffered.

96.     The actions of these defendants were purposeful, malicious, and in bad faith.

97.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1988.

**THIRD CLAIM FOR RELIEF:**
**MONELL CLAIM AGAINST CITY OF NEW YORK**

98.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "97", inclusive, of this Complaint, as if same were fully set forth herein at length.

99.     The plaintiff's Fourth Amendment rights were violated due to the defendant police officers' unconstitutional application of the City of New York's "Stop and Frisk" program in effect on January 26, 2012.

100.    The City's race-centric "Stop and Frisk" program has been challenged since at least 1999, when Daniels v. City of New York, 99 Civ. 1695 (S.D.N.Y. 1999), a class action, was filed alleging that the City had a policy, custom, and practice carried out by the NYPD's Street Crimes Unit of suspicionless, racially-motivated stops and frisks that violated the public's Fourth and Fourteenth Amendments. The Daniels plaintiffs sought injunctive relief prohibiting the Street Crimes Unit from improperly using race or national origin in conducting stops and frisks, reforming relevant training, supervision, and monitoring procedures, requiring officers to complete UF-250 forms for each stop they conduct, that UF-250s be periodically reviewed for compliance with the Constitution, and that UF-250s be computerized and maintained in a database. In 2003, the parties in Daniels reached a settlement, wherein the City agreed to implement stop and frisk audit procedures, revise training, ensure that all stops be documented on a revised UF-250 form, conduct joint community forums, and provide class counsel with quarterly updates. The Daniels settlement remained in effect through December 31, 2007.

101.    In 2008, David Floyd and Lalit Clarkson commenced a lawsuit against the City alleging that the City had a policy, custom, and practice of suspicionless and race-based stops and frisks and sought city-wide injunctive relief, including changes to the NYPD's policies and practices governing training, supervision, discipline, and monitoring of officers with respect to stop and frisk and racial profiling. *See*, Floyd v. City of New York, 08 Civ. 1034 (S.D.N.Y. 2008).

102.    Also in 2008, Jaenean Ligon filed a putative class action against the City, challenging the NYPD's practice of stopping, questioning, frisking, summonsing, and arresting people on suspicion of trespass in and around private residential buildings located in the Bronx. *See*, Ligon v. City of New York, 12 Civ. 2274 (S.D.N.Y. Mar. 28. 2008).

103.    Whether the iteration of the City's "Stop and Frisk" program was valid at the time of Plaintiff's arrest is immaterial as the City was aware that its police officers were applying and implementing stops and frisks in unconstitutional ways, and consciously chose to ignore this.

104.    In response to repeated reports that its police officers were unconstitutionally applying the "Stop and Frisk" program based upon race and/or having a disparate impact on racial minorities, the City failed to train, supervise or discipline these offending officers, thereby amounting to deliberate indifference to the rights of those with whom the officers interact and creating the perception amongst police officers that those who unconstitutionally stop and frisk based upon race will not be punished.

105.    The City and its supervisors had knowledge of or, had they diligently exercised their duties to screen, train, supervise, control and discipline on a continuing basis should have had knowledge that the wrongs of the type heretofore alleged, or other unlawful or unconstitutional acts, were being committed. The City had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the rights of the public failed to do so.

106.    The City maintained an inadequate structure for monitoring their employees and the individual cases in which they interact with the public.

107.    The defendant police officers engaged in conduct that constitutes a custom, usage, practice, procedure or rule of the City but which is forbidden by the Constitution of the United States.

108.   Prior to January 26, 2012, the City and NYPD developed and maintained customs, policies, usages, practices, procedures and rules exhibiting deliberate indifference to the constitutional rights of the public, which caused the violations of the plaintiff's rights.

109.   The aforementioned customs, policies, usages, practices, procedures and rules of the City and NYPD included, but were not limited to: (a) racial profiling; (b) stop and frisk; (c) a failure to train its officers as to the Debour/Hollman quantum of police contact in street encounters; (d) a failure to train and supervise its officers in Terry stops, the right to approach and request information, the right to inquire, reasonable suspicion to stop and frisk, and probable cause to arrest and search; (e) a failure to train and supervise its officers in strip searches; (f) a failure to train and supervise its officers in how, when and why to *Mirandize* individuals in custody; (g) in blindly accepting an officer's statement of race-neutral factors leading to a street encounter despite evidence and/or intent to the contrary; (h) in having an "ask first, warn/*Mirandize* later" policy; (i) a failure to train its officers in the necessity for warrants prior to arrests and searches of a person and his property, and/or failing to quash a practice of "search first, get legal authority later" (j) a failure to train and supervise its officers in reporting and investigating abuses of authority by staff and supervisors; (k) in inadequately and/or improperly investigating complaints of racial profiling, harassment, intimidation, misconduct, use of force, false arrest and abuse of authority by its police officers, and inadequately punishing the subjects of those complaints; (l) in racially profiling and tolerating racial profiling by police officers; (m) the Internal Affairs Bureau and Inspector General having substantially failed in their responsibilities to investigate misconduct similar to alleged herein and discipline offenders; (n) having polices that operate to insulate police officers who engage in serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference;

and (o) allowing police officers and supervisors to engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence," which has become so engrained in the NYPD so as to constitute a policy of the City and NYPD.

110.    The aforesaid policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implements or tolerated by policymaking officials for the City, including but not limited to the New York City Police COmmissioner, who knew (a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases; (b) either that such issues present police officers with difficult choices of the sort that instruction, training and/or supervision will make less difficult, or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police officers mishandling such situations and by the incentives that prosecutors have to make the wrong choice in such situations; and (c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

111.    The long-standing failure or refusal of the City to supervise and discipline the officers under its control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse and misconduct alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

112.    The City's policy or custom of tolerating and authorizing this type of abuse is further evidenced by frequent and significant findings of misconduct over a period of years by supervisors and the police officers and prosecutors they supervise.

113.    The failures and refusals by the City to hold these supervisors and police officers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly thousands of other persons.

114.    Through promotions and other financial and status incentives, the City and has the power to reward police officers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. The City's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

115.    The pattern of unchecked abuse by police officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of the City to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the claimed misconduct against the plaintiff

116.    The foregoing customs, policies, usages, practices, procedures and rules of the City constituted deliberate indifference to the safety, freedom, and constitutional rights of the plaintiff.

117.    The foregoing customs, policies, usages, practices, procedures and rules of the City were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

118.    The foregoing customs, policies, usages, practices, procedures and rules of the City were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

119.    The pattern of misconduct alleged herein has been expressly and/or implicitly condoned by ranking officials and supervisors at the NYPD, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk posed to the public. The fact that these abuses remain unchecked and unrestrained leads to the perception that police officers, supervisors and staff may act with impunity.

120.    Likewise, the City and NYPD have failed or refused to hold accountable high-ranking supervisors in the face of frequent and significant misconduct, over a period of years, by these supervisors and those they supervise. This failure has subjected Plaintiff and other members of the public to the constitutional violations alleged herein.  This failure is a proximate cause of the injuries sustained by the plaintiff and by other members of the public.

121.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1988.

### FOURTH CLAIM FOR RELIEF:
### MONELL CLAIM AGAINST DISTRICT ATTORNEY CYRUS VANCE

122.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "121", inclusive, of this Complaint, as if same were fully set forth herein at length.

123.    Prior to and on the date of Plaintiff's arrest, prosecution and conviction, DA Vance and supervisors and Bureau Chiefs of the New York County District Attorney's Office exhibited a deliberate indifference toward the training, supervision and discipline of assistant

district attorneys that amounted to deliberate indifference to the rights of those with whom prosecutors interact. Plaintiff's rights were violated due to said defendants' failure to train, supervise and discipline prosecutors with regard to (a) the obligation to discontinue a criminal prosecution when facts are discovered that negate probable cause for an arrest and/or search; (b) the obligation to discontinue a criminal prosecution when facts are discovered that demonstrate statements and physical evidence were obtained incident to an unlawful stop, seizure, arrest and/or search; and (c) the obligation to report racial profiling and abuses of authority at DANY and NYPD.

124.    Prior to and on the date of Plaintiff's arrest, prosecution and conviction, DA Vance and supervisors and Bureau Chiefs of the New York County District Attorney's Office had an unconstitutional custom, practice and/or policy to (a) initiate and prosecute criminal actions against individuals despite knowing that an arrest (and evidence or statements obtained therefrom) was the fruit of an illegitimate and unlawful police encounter with the intention or goal of plea bargaining a conviction; (b) prosecute and turn a blind eye to arrests stemming from illegitimate and unlawful police encounters; (c) plea bargain convictions from legally-unsustainable prosecutions; (d) seek excessive bail and delay prosecutions in an effort to obtain plea bargain convictions; (e) prosecute criminal actions against individuals where they reasonably believed they could not lawfully substantiate the allegation and/or prove guilt beyond a reasonable doubt; (f) rely on statements and physical evidence unlawfully obtained by the police, prosecutors and investigators; (g) inadequately and/or improperly investigating complaints of racial profiling, harassment, intimidation, misconduct, use of force, false arrest and abuse of authority by police officers; (h) tolerate racial profiling by police officers in their prosecutions; (i) avoid their responsibilities to investigate prosecutorial and police misconduct

similar to alleged herein and discipline offenders; (j) in having polices that operate to employees who engage in serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; and (p) allowing its prosecutors and supervisors to engage in a pattern and practice of actively and passively covering up misconduct by fellow employees and police officers, thereby establishing and perpetuating a "code of silence", which has become so engrained in the DANY so as to constitute a policy of DANY.

125.    The aforesaid policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implements or tolerated by policymaking officials for DANY, including but not limited to DA Vance and the Bureau Chiefs, who knew (a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases; (b) either that such issues present prosecutors with difficult choices of the sort that instruction, training and/or supervision will make less difficult, or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of prosecutors mishandling such situations and by the incentives that prosecutors have to make the wrong choice in such situations; and (c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

126.    DA Vance and the Bureau Chiefs are supervisory officials of DANY.

127.    The Bureau Chiefs were first-line supervisors to ADA Connors.

128.    DA Vance and the Bureau Chiefs had first-hand knowledge of or, had they diligently exercised their duties to train, supervise and discipline ADA Connors on a continuing

basis should have had such knowledge, that the unlawful and unconstitutional acts alleged herein were going to be committed.

129.     Inasmuch as ADA Connors consulted with the Bureau Chiefs at the time he was assigned the prosecution of Plaintiff and continued to consult with them through Plaintiff being sentenced, the Bureau Chiefs were personally involved in the violations alleged herein.

130.     DA Vance and the Bureau Chiefs, as supervisory personnel, had the power, authority and duty to prevent or aid in preventing the commission of the wrongs alleged, but instead intentionally, knowingly, recklessly and/or with deliberate indifference to the rights of the plaintiff failed to do so.

131.     DA Vance and the Bureau Chiefs failed to maintain an adequate structure for monitoring their prosecutors and the cases they are assigned to prosecute.

132.     ADA Connors engaged in conduct that constitutes a custom, usage, practice, procedure or rule of DA Vance and the DANY but which is forbidden by the Constitution of the United States.

133.     Prior to January 26, 2012, DA Johnson, Bureau Chief Bonavoglia, Asst. Bureau Chief Rivera, and other BXDA officials developed and maintained customs, policies, usages, practices, procedures and rules exhibiting deliberate indifference to the due process and constitutional rights of the individuals they prosecute, their Brady, Rosario and other obligations during those prosecutions, their sworn oaths as prosecutors, the ABA Standards for Criminal Justice, and the New York Rules of Professional Conduct, which caused the violations of the plaintiff's rights.

134.   Prior to January 26, 2012, DA Vance and the Bureau Chiefs instructed and trained their prosecutors to comply with their own interpretation and application of the Fourth Amendment, which caused the violations of the plaintiff's rights.

135.   Likewise, prior to January 26, 2012, DA Vance and the Bureau Chiefs, and other DANY officials have, upon information and belief, instructed and trained their employees and staff not to document communications with officers, not to take notes during these communications, not to document the information elicited during these communications, not to record these communications, and not to communicate with these individuals in writing so as not to create material potentially discoverable to the defense, thereby permitting the New York County District Attorney's Office to act with relative impunity, which caused or contributed to the violations of the plaintiff's rights.

136.   The long-standing failure or refusal of these defendants to supervise the employees under said defendant's control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse and misconduct alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

137.   Said defendants' policy or custom of tolerating and authorizing this type of abuse is further evidenced by frequent and significant findings of misconduct over a period of years by supervisors and the prosecutors they supervise.

138.   The failures and refusals to hold these supervisors and prosecutors accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

139.    Through promotions and other financial and status incentives, DA Vance has the power to reward prosecutors who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not.  DA Vance' actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of prosecutorial misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

140.    The pattern of unchecked abuse by prosecutors and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of DA Vance and the bureau chiefs to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the unconstitutional conduct claimed by Plaintiff

141.    The foregoing customs, policies, usages, practices, procedures and rules of DA Vance and the bureau chiefs constituted deliberate indifference to the safety, freedom, and constitutional rights of the plaintiff.

142.    The foregoing customs, policies, usages, practices, procedures and rules of DA Vance and the bureau chiefs were the direct and proximate cause of the constitutional violations suffered by Plaintiff.

143.    The foregoing customs, policies, usages, practices, procedures and rules of DA Vance and the bureau chiefs were the moving force behind the constitutional violations suffered by Plaintiff.

144.    The pattern of misconduct alleged herein has been expressly and/or implicitly condoned by ranking officials and supervisors at DANY, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk posed to the

public. The fact that these abuses remain unchecked and unrestrained leads to the perception that prosecutors, supervisors and staff may act with impunity.

145.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1988.

## FIFTH CLAIM FOR RELIEF:
## FAILURE TO PROTECT AND NEGLECT

146.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "145" inclusive, of this Complaint, as if same were fully set forth herein at length.

147.    The defendants each owed a duty to care and protect Plaintiff while he was in their custody, control and care.

148.    As set forth above, Defendants failed to protect Plaintiff in the instance.

149.    As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

150.    Due to the defendants' failure to protect the plaintiff, he suffered the damages aforesaid.

151.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## PENDANT STATE CLAIMS

### Conditions Precedent

152.    On May 1, 2015, Notices of Claim setting forth the basis of the claim, the time, place and manner in which it arose, and a description of injuries sustained by the plaintiff herein

were timely served upon the City of New York and New York County District Attorney's Office ("DANY").

153.    More than thirty (30) days have elapsed since Plaintiff served his Notices of Claim and the City and DANY have neglected and refused to make an adjustment thereof.

154.    The City of New York conducted its statutory hearing on August 31, 2015.

155.    DANY did not notice a statutory hearing and, as such, same is deemed waived.

156.    This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

157.    This action falls within one or more of the exceptions set forth in CPLR §1602.

### FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: ASSAULT, BATTERY, FALSE ARREST, FALSE IMPRISONMENT, AND MALICIOUS PROSECUTION

158.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "157", inclusive, of this Complaint, as if same were fully set forth herein at length.

159.    As alleged herein, the defendants assaulted, battered, falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff.

160.    The defendants' conduct complained of herein was intentional and without privilege.

161.    As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

162.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

163.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "162", inclusive, of this Complaint, as if same were fully set forth herein at length.

164.     As alleged herein, the defendants deprived Plaintiff of his constitutional and statutory rights, including but not limited to his rights to free speech and peaceable assembly, to be free from retaliation for exercising his constitutional and statutory rights, to be free from unlawful search and seizure, to be free from self incrimination, to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, and to due process of law, as guaranteed to him by the Constitution and statutes of the State of New York, the NYS Human Rights Law, the NYS Civil Rights Law, the City Human Rights Law, and the Charter, rules and regulations of the City of New York.

165.     The defendants' conduct manifested a reckless disregard for and/or deliberate indifference to Plaintiff's constitutional and statutory rights.

166.     The aforesaid violations, and the failure of supervisory personnel of the City, NYPD and DANY to take appropriate steps to curb the widespread pattern of same or similar conduct by their police officers and prosecutors violated plaintiff's rights afforded to him by New York State's Constitution and statutes.

167.     As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

168.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and

reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

### THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### NEGLIGENT SCREENING, HIRING, TRAINING, SUPERVISION AND RETENTION

169.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "168", inclusive, of this Complaint, as if same were fully set forth herein at length.

170.    The City and DANY were negligent, careless and reckless in their screening, hiring, training, retention, supervision, direction, control, appointment and/or promotion of the their agents, servants and employees, including but not limited to the defendants herein, in that said employees lacked the experience and ability to be employed by the City and DANY; in failing to exercise due care and caution in their screening, hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them; in that said defendants, their agents, servants and/or employees, failed to supervise, train, suspend and/or terminate the defendant-employee(s) when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

171.    The failure of the City and DANY to adequately train their agents, servants and employees, including but not limited to the defendants herein, in the exercise of their employment functions, and their failure to enforce the laws of the United States of America, the State of New York, and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the public in general and Plaintiff in

particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

172.    The City and DANY knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, including but not limited to the defendants herein, to engage in the wrongful conduct heretofore alleged in this Complaint.

173.    The City and DANY knew or should have known that their policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, including but not limited to the defendants herein, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

174.    That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

175.    The aforesaid acts of the City and DANY, their agents, servants and employees, resulted in the plaintiff's rights being violated and his freedom taken from him.

176.    As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

177.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

**FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
NEGLIGENCE**

178.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "177", inclusive, of this Complaint, as if same were fully set forth herein at length.

179.    Defendants, their agents, servants and employees, owed Plaintiff a duty of care.

180.    Defendants, their agents, servants and employees, negligently breached their duty of care to Plaintiff.

181.    The negligence of Defendants, their agents, servants and employees, in the instance was the proximate cause of the injuries and damages suffered by the Plaintiff.

182.    Inasmuch as the defendant-employees were acting for, upon, and/or in furtherance of the business of their respective employers and/or within the scope of their employment, the City and DANY are liable, jointly and severally, under the doctrine of *respondeat superior* for the tortious actions of same.

183.    As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

184.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
FAILURE TO PROTECT**

185.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "184" inclusive, of this Complaint, as if same were fully set forth herein at length.

186.     As set forth above, each of the defendants failed to intervene, mitigate and/or stop each of the incidents alleged herein at any time during the happening of these incidents.

187.     As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

188.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

### SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### PRIMA FACIE TORT

189.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "188" inclusive, of this Complaint, as if same were fully set forth herein at length.

190.     The aforesaid conduct of the defendants, their agents, servants and employees, as well as their delay and failures to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and were the proximate cause of the injuries and damages suffered by the plaintiff.

191.     As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

192.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, punitive damages against the individual defendants, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f).

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

Plaintiff requests the following relief, jointly and severally, as against all of the defendants:

1.      An award of compensatory damages against all defendants in an amount to be determined at trial;

2.      An award of punitive damages against the non-municipal defendants in an amount to be determined at trial;

3.      An award of attorney's fees, expert's fees, costs and disbursements; and

4.      Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       February 26, 2016

Respectfully submitted,

**HELD & HINES, LLP**
*Attorneys for Plaintiff*
Office and P.O. Address
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

By: _____
              Philip M. Hines, Esq.

## VERIFICATION

STATE OF NEW YORK          )
                          )  ss:
COUNTY OF NEW YORK         )

**JERMEL MANGUM,** being duly sworn deposes and says:

That deponent is the plaintiff in the within action; that deponent has read the foregoing

**AMENDED COMPLAINT** and knows the contents thereof, that same is true to deponent's own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

that as to those matters deponent believes to be true.

_____
JERMEL MANGUM

Sworn to before me this 26th
day of February, 2016

_____
NOTARY PUBLIC

MARC J. HELD
Notary Public, State of New York
No. 02HE6293457
Qualified in Kings County
Commission Expires December 09, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JERMEL MANGUM,

                                                            15 CV 8810 (PAE)

                    Plaintiff,


        - against -


CITY OF NEW YORK, POLICE OFFICER MOURAD
ARSLANBECK, Tax No. 937999, individually and in his
official capacity, POLICE OFFICER DAVID PORRAS,
Tax No. 939244, individually and in his official capacity,
NEW YORK COUNTY DISTRICT ATTORNEY CYRUS
R. VANCE, individually and in his official capacity, and
ASSISTANT DISTRICT ATTORNEY NICHOLAS
CONNOR, individually and in his official capacity,

                    Defendants.

------------------------------------------------------------------------X


## VERIFIED AMENDED COMPLAINT

**HELD & HINES, LLP**
*Attorneys for Plaintiff*
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**


Signature (Rule 130-1.1-a)


**PHILIP M. HINES, ESQ.**