UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                  :

JERMEL MANGUM,                      :

                    Plaintiff,        :              15 Civ. 8810 (PAE)
                                :

          -v-                   :            OPINION & ORDER
                                :

THE CITY OF NEW YORK, et al.,     :

                    Defendants.    :

                                :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On January 26, 2012, Jermel Mangum was stopped by New York Police Department ("NYPD") Officers Mourad Arslanbeck and David Porras outside of the Baruch Houses, a public housing development in lower Manhattan. The officers frisked and searched Mangum and found a loaded handgun in his backpack. Mangum was arrested and taken into custody, where officers recovered marijuana and heroin from his person. Mangum was charged with, and in September 2012 pled guilty to, possession of a weapon and possession of a controlled substance. However, in February 2015, Mangum's convictions were reversed by a state appellate court, which held that the firearm and narcotics seized from Mangum should have been suppressed.

In November 2015, Mangum brought this action under 42 U.S.C. § 1983 and state law, claiming that his stop, search, arrest, imprisonment, and prosecution were all unlawful. He claims that Officers Arslanbeck and Porras stopped him based on his race and without justification and arrested him without probable cause; that Assistant District Attorney Nicholas Connor ("ADA Connor") maliciously prosecuted him, and conspired with the officers to fabricate evidence against him; that the City of New York ("the City") failed to properly train

and discipline its officers with respect to executing its "Stop and Frisk" policy; and that the City

and District Attorney Cyrus Vance ("DA Vance") failed to properly train and discipline local

prosecutors.  Mangum seeks compensatory and punitive damages and an award of attorney's

fees.

Defendants move to dismiss Mangum's Amended Complaint, Dkt. 34 ("Am. Compl."),

as to all claims.  For the reasons that follow, the Court grants defendants' motion to dismiss.

## I.       Background[1]

### A.       The Parties

Mangum is a New York City resident.  Am. Compl. ¶ 11.

The City is responsible for the NYPD and the New York County District Attorney's

Office ("DANY").  Officers Arslanbeck and Porras were involved in the stop, search, and arrest

of Mangum.  DA Vance was New York County District Attorney at all relevant times, and was

responsible for supervising and training DANY employees, including prosecutors.  ADA Connor

was responsible for prosecuting Mangum's case.  Officer Arslanbeck, Officer Porras, DA Vance,

and ADA Connor are sued in their individual and official capacities.  *Id.* ¶¶ 14–15.

### B.       Mangum's January 26, 2012 Arrest

On or about January 26, 2012, Mangum was walking with his younger brother and his

brother's friend in front of the Baruch Houses in Manhattan.  *Id.* ¶ 28.  Officers Arslanbeck and

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts in the Amended Complaint to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court has also considered "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011).  Here, these include the charging instruments and court decisions in Mangum's state-court case.

Porras focused on Mangum and his two companions, Mangum alleges, because they are African-American, and stopped, detained, and frisked all three. *Id.* ¶ 29. At the time of the stop, Mangum alleges that he and his companions "had not violated any laws, were not doing anything suspicious or illegal, and had no contraband in plain view." *Id.*

The officers' frisk of Mangum revealed a loaded handgun in Mangum's backpack. Wilson Decl. Ex. A ("Berkman Ruling") at 3. Mangum alleges that, in carrying out the frisk, Officer Porras "physically manipulated" the backpack, leading to the discovery of the handgun. Am. Compl. ¶ 37.

Mangum was then arrested, taken to an NYPD precinct, and strip-searched without a warrant. *Id.* ¶¶ 38, 43–44. While in transit, Officer Porras and another officer, Hernandez, "began a custodial interrogation" of Mangum, "questioning him as to where he obtained the firearm," without first giving *Miranda* warnings. *Id.* ¶ 43. The search of Mangum at the precinct found marijuana in Mangum's pocket and heroin in the waistband of his underwear. Berkman Ruling at 3; Am. Compl. ¶ 44. Mangum was arraigned the following day, January 27, 2012. *Id.* ¶ 45.

### C.    Mangum's Prosecution

On March 8, 2012, a grand jury indicted Mangum for criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree, and possession of pistol or revolver ammunition within the City. Berkman Ruling at 1.

On August 13, 2012, after a suppression hearing at which both arresting officers testified, New York Supreme Court Justice Carol Berkman suppressed Mangum's statements to law enforcement (save those made at the scene of his arrest) on the grounds that they were not demonstrably voluntary. *Id.* at 7–8. However, Justice Berkman declined to suppress the gun and

narcotics evidence.  Based on their testimony, she held that Officers Arslanbeck and Porras had been justified in stopping and frisking Mangum, crediting their claim to have seen him commit the offense of littering by throwing a Styrofoam cup on the ground, and holding that the ensuing recovery of the gun supported Mangum's arrest and the search incident to it which found the narcotics on Mangum's person.  *Id.* at 2, 4–7.  Mangum claims that the testimony offered about his littering was fabricated and that he had not, in fact, possessed or thrown a Styrofoam cup. Am. Compl. ¶ 30.

On September 20, 2012, Mangum pled guilty to criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third degree, preserving the right to appeal the adverse suppression ruling.  He was sentenced, *inter alia*, to five years' imprisonment.  *Id.* ¶ 51.

### D.    The Reversal of Mangum's Convictions

On February 3, 2015, Mangum's convictions were reversed by the Appellate Division, First Department.  It held that the gun found in Mangum's backpack and the drugs found on his person should have been suppressed.  In so holding, the Appellate Division relied on a decision by the New York Court of Appeals, *People v. Reid*, 24 N.Y.3d 615 (2014), decided after Mangum's arrest, which held that for a warrantless search to be valid as a search incident to arrest, an officer must have intended, at the time of the search, to arrest the suspect for an offense for which there was probable cause to arrest the suspect.  In Mangum's case, because the officers had not intended to arrest Mangum for littering, despite having had probable cause to do so, the search of his backpack was unlawful, as was the ensuing search of his person.  *People v. Mangum*, 3 N.Y.S.3d 332 (1st Dep't 2015).  The same day, Mangum was released from prison. Am. Compl. ¶ 54.

### E.    Procedural History of this Case

On November 9, 2015, more than nine months after his conviction was overturned,

Mangum filed a complaint in this Court. Dkt. 1. On February 8, 2016, defendants moved to

dismiss for failure to state a claim. Dkt. 26. On February 29, 2016, Mangum filed an Amended

Complaint. Dkt. 34.

The Amended Complaint brings 11 claims, which it styles as follows: (1) § 1983 claims

against Officer Arslanbeck and Officer Porras for unlawful stop and search, false arrest, false

imprisonment, malicious prosecution, fabrication of evidence, denial of due process, denial of

equal protection, and conspiracy; (2) § 1983 claims against DA Vance and ADA Connor for

false imprisonment, failure to give proper *Miranda* warnings, malicious prosecution, and

conspiracy; (3) a § 1983 *Monell* claim against the City, based on a failure to train, supervise, and

discipline employees with respect to stop-and-frisks; (4) a 1983 *Monell* claim against DA

Vance based on a failure to train, supervise, and discipline employees with respect to

prosecutorial standards; (5) § 1983 claims against all defendants for "failure to protect and

neglect"[2]; (6) claims under New York law, mirroring the § 1983 claims, against all defendants

for assault, battery, wrongful arrest, false imprisonment, and malicious prosecution; (7) a New

York law claim for a "violation of [the] New York [C]onstitution and statutes"; (8) New York

Law claims against the City and DA Vance for negligent screening, hiring, training, supervision,

and retention of DANY employees; (9) a New York law claim against all defendants for

---

[2] "Failure to protect and neglect" is not a cognizable claim under § 1983. The Court assumes that the Amended Complaint meant to allege a "failure to intervene." *See, e.g., Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) (summary order).

negligence; (10) a New York law claim against all defendants for "failure to protect"; and (11) a

New York law claim against all defendants for "prima facie tort." Am. Compl. ¶¶ 14–37.

On March 21, 2016, defendants moved to dismiss on various grounds, including that

Mangum's core claims were untimely, Dkts. 35, 38, and filed supporting memoranda of law,

Dkt. 37 ("Vance Br."), 40 ("City Br."), and accompanying declarations, Dkts. 36, 39. On April

11, 2015, Mangum filed an opposition brief. Dkt. 44 ("Pl. Br."). On April 25, 2015, defendants

filed reply briefs. Dkts. 47 ("Vance. Reply Br."), 48 ("City Reply Br.").

## II.    Applicable Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

complaint is properly dismissed where, as a matter of law, "the allegations in a complaint,

however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[] all factual claims in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon*

*Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th*

*Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). However, "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *factual* allegations must

be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim

plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

### III.   Discussion

Defendants move to dismiss on numerous grounds.  In analyzing these arguments, it is useful to sort the many claims in the Amended Complaint into four categories.

The first category are claims brought under § 1983 challenging the events of January 26–27, 2012 – Mangum's stop, frisk, arrest, search incident to arrest, and the start of his imprisonment.  These § 1983 claims also include the *Monell* claim challenging the NYPD's practices with regard to stop-and-frisks.  As explained below, these § 1983 claims are time-barred.

The second category are claims brought under § 1983 challenging the alleged falsehoods used to secure, in state court, the finding of probable cause to stop Mangum, to wit, the officers' alleged fabrication of the evidence of Mangum's littering a Styrofoam cup which led Justice Berkman to uphold the searches that yielded the gun and drug evidence.  As explained below, these § 1983 claims, which include a due process claim and a fabrication of evidence claim, are also untimely.

The third category are claims brought under § 1983 that challenge Mangum's prosecution.  These include the claim for malicious prosecution and the related *Monell* claim challenging customs and practices of the DANY.  As explained below, these claims fail because the gun and drugs that were undisputedly found on Mangum's person supplied, as a matter of law, probable cause justifying a prosecution, irrespective of the later appellate ruling that warrantless searches that yielded this evidence violated Mangum's Fourth Amendment rights.

The fourth and final category consists of Mangum's other claims.  To the extent brought under § 1983, these nebulous claims – for conspiracy, denial of equal protection, and "failure to protect and neglect" – all fail to state a claim, requiring dismissal under Rule 12(b)(6).  To the extent brought under state law, some of these claims must also be dismissed, as either untimely or substantively deficient.  As to the other state-law claims, the Court, in the absence of any viable federal claim, declines to exercise supplemental jurisdiction.

### A.    § 1983 Claims Dismissed as Untimely

Courts reviewing § 1983 claims "borrow the state statute of limitations for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 236 (1989).  Where a state has one general, residual statute of limitations for personal injury actions sounding in tort, and different statutes of limitations for enumerated intentional torts, a court reviewing § 1983 claims should use the residual statute of limitations. *Id.* at 243–45.  In New York, the residual statute of limitations for personal injury is three years.  N.Y. C.P.L.R. § 214 (2003); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years.").  A § 1983 claim accrues when the plaintiff "knows or has reason to know" of the harm serving as the basis for that claim. *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) ("[T]he claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm."); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).

1.     **Claims Challenging Mangum's Stop, Frisk, Arrest, and Imprisonment**

Applying these familiar principles, Mangum's claims challenging the events of January

26 and 27, 2012 – the stop, frisk, arrest, search incident to arrest, and imprisonment – are all

untimely, because Mangum did not bring this lawsuit until November 2015, *i.e.*, three years and

10 months after the fact.  It is no response that the state courts did not vindicate Mangum's claim

that the stop and frisk that initiated those events breached his Fourth Amendment rights until

later:  As the Second Circuit has repeatedly held, a § 1983 claim accrues once the wrongful

conduct which is the basis for the claim causes harm to the plaintiff, and the plaintiff becomes

aware of that harm – not when the plaintiff receives "judicial verification" of his claim of the

harm (*e.g.*, a reversal of his conviction).  *See, e.g.*, *Veal*, 23 F.3d at 724 (2d Cir. 1994); *see also*

*Woods v. Candella*, 13 F.3d 574, 575–76 (2d Cir. 1994); *Mack v. Varelas*, 835 F.2d 995, 999 (2d

Cir. 1987).  Here, Mangum, as the subject of those events, was necessarily aware of the stop,

frisk, arrest, search incident to arrest, and imprisonment at the moment they happened.  *See*

*McClanahan v. Kelly*, No. 12 CIV. 6326, 2014 WL 1317612, at *4 (S.D.N.Y. 2014) ("An

unlawful search claim accrues at the time of the search."); *Deraffele v. City of New Rochelle,* No.

15-CV-282, 2016 WL 1274590, at *10 (S.D.N.Y. Mar. 30, 2016) ("Plaintiff's Fourth

Amendment claim clearly accrued . . . the date on which the allegedly illegal search and entry

occurred").

The Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), holding untimely

a § 1983 claim for false arrest, is, in fact, squarely on point.  The Court there held that "the

statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the

Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the

9

time the claimant becomes detained pursuant to legal process." *Id.* at 397. The Court explained

that, for the purpose of a § 1983 claim sounding in false arrest, the person arrested becomes

"detained pursuant to legal process" when he is arraigned, and his § 1983 claim accrues at that

point. *Id.* at 389; *see also Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d

Cir. 2009) (summary order); *Allen v. Antal*, No. 12 CIV. 8024 NSR, 2014 WL 2526977, at *4

(S.D.N.Y. Mar. 13, 2014), *reconsideration denied*, No. 12 CIV. 8024 NSR, 2014 WL 2526913

(S.D.N.Y. June 3, 2014); *Peterec v. Hilliard*, No. 12-CV-3944 CS, 2013 WL 5178328, at *4

(S.D.N.Y. Sept. 16, 2013). The Supreme Court in *Wallace* further held that this rule applies

whether the plaintiff styles a claim as one of false arrest or false imprisonment, because "the

former is a species of the latter." 549 U.S. at 388. Mangum's false arrest and false

imprisonment claims thus accrued on January 27, 2012, the day he was arraigned. Am. Compl. ¶

45. The statute of limitations therefore expired with regard to these § 1983 claims, and those

challenging the stop, frisk, and search the day before, nearly 10 months before November 2015,

when Mangum brought this lawsuit.

### 2.      Claims Challenging the Fabrication of Evidence

The same three-year statute of limitations governs Mangum's § 1983 claims based on

police misconduct, to wit, that the police officers fabricated the claim of littering on which they

based the stop. *See Owens*, 488 U.S. at 251; *Woods*, 13 F.3d at 575. As with other § 1983

claims, claims of police misconduct accrue when "the alleged conduct has caused the claimant

harm and the claimant knows or has reason to know of the allegedly impermissible conduct and

the resulting harm." *Veal*, 23 F.3d at 724. In *Veal*, for example, the plaintiff brought a § 1983

claim after his criminal conviction had been overturned, arguing that the conviction had been

based on blatant police misconduct – a manipulative and highly suggestive identification

procedure. *Id.* Finding the claim untimely, the Second Circuit rejected Veal's claim that he had been entitled to wait to file suit until he had "judicial verification that the defendants' acts were wrongful"; rather, the limitations period begins to run as soon Veal had become aware of the police conduct. *Id.*

Applying these principles, the decisive issue is, therefore, when Mangum knew that the officers were justifying his stop based on the (allegedly false) claim that he had been seen littering. Mangum argues that he did not know at first that he had a "valid cause of action" arising out of the false claim of littering because he was not immediately aware "that the police and prosecution could or would present evidence of a Styrofoam cup." Pl. Br. at 16. But that does not make Mangum's § 1983 claims of fabrication timely. Even if Mangum was originally unaware that the officers would justify the stop based on a claim of littering, he surely knew that at the very latest, by August 13, 2012, when the officers, at the suppression hearing before Justice Berkman, so testified – and when Justice Berkman, relying on this testimony, sustained the stop and ensuing searches of the backpack and of Mangum's person. Berkman Ruling at 6–7. The limitations period therefore began to run at the latest that day. However, Mangum did not bring this lawsuit until three years and three months later.

Also wrong is Mangum's claim that, as of the suppression hearing, he had not yet suffered an "injury" as a result of the officers' allegedly bogus claim of littering. Pl. Br. at 17. Justice Berkman's ruling at that hearing, denying Mangum's motion to suppress the critical physical evidence in the case, was an obvious source of harm to Mangum, as this evidence all but established his guilt on the criminal possession offenses. Indeed, a month later, Mangum pled guilty to those offenses, a plea he claims was induced by the officers' fabricated littering claim. *See id.* (claiming that he was "fraudulently induced . . . to enter a plea bargain, on the

basis of [the allegedly fabricated Styrofoam cup testimony]"). Mangum's guilty plea, too, was a separate harm – and that plea, on September 20, 2012, also predated his filing of this lawsuit by more than three years. By any measure, then, Mangum's § 1983 claim based on fabrication of evidence is untimely.

### 3. Unavailability of Equitable Tolling

In apparent recognition of the untimeliness of the above § 1983 claims, Mangum asks the Court to apply "equitable tolling" to salvage these claims.[3] Pl. Br. at 14–17. Under that doctrine, where a defendant has "fraudulently conceal[ed]" a "wrong" that serves as a basis for a plaintiff's legal claim, the statute of limitations for that claim "does not begin running, until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983); *Pearl*, 296 F.3d at 82. Mangum argues that the officers' invention of the claim that he had littered was an act of fraudulent concealment, of which he first learned in February 2015, when the Appellate Division reversed his conviction. Pl. Br. at 15–16.

That argument is completely unpersuasive. Assuming *arguendo* that Officers Arlsanbeck and Porras invented the story that they had seen Mangum litter a Styrofoam cup shortly before his arrest, Mangum necessarily knew of that fiction from the moment it was first articulated, which at the latest was at the August 2012 suppression hearing. And the February 2015 Appellate Division ruling certainly did not alert Mangum to a police falsehood. The ruling did not reveal *any* new fact, let alone that the littering claim was, ostensibly, fabricated. Rather, the

---

[3] Although Mangum expressly invokes this doctrine only in relation to his claims of false arrest and imprisonment, the Court infers that he intended to do so in connection with the other claims addressed above as well. Pl. Br. at 14–18.

Appellate Division merely applied an intervening precedent of the New York Court of Appeals to hold that suppression was required. The doctrine of equitable tolling, therefore, does not rescue Mangum's untimely claims.

### 4. *Monell* claims based on NYPD conduct

Under the Supreme Court's decision in *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), local governing bodies, such as the City of New York, may be sued directly under § 1983 only where "a violation of rights resulted from the 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (quoting *Monell*, 436 U.S. at 694). To adequately plead a *Monell* claim, a plaintiff must plead "(1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (summary order) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted).

The Court has significant doubt that the Amended Complaint has adequately pled the existence of a relevant municipal policy or custom relating to the conduct of Officers Arslanbeck and Porras. But even assuming the Amended Complaint did so, to bring a *Monell* claim, Mangum would still be required to plead a viable § 1983 claim of his own: A plaintiff may not challenge a municipal custom or policy without alleging an actionable violation of his constitutional rights caused by that policy. *See, e.g., Monell*, 436 U.S. at 691 (to prevail, plaintiff must establish, *inter alia*, that a "municipal policy of some nature caused a constitutional tort" to plaintiff); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (noting that the first step in finding

§ 1983 supervisory liability is finding an underlying constitutional violation).  For the reasons

discussed, none of Mangum's § 1983 claims against the two officers is viable, because all are

untimely.  Thus, whether or not a plaintiff with a timely claim could bring a viable *Monell* claim

based on the allegations here of a municipal custom or policy that caused his injury, Mangum

has no standing to do so.

Mangum's *Monell* claim against the City based on alleged NYPD misconduct must

therefore also be dismissed.

**B.      § 1983 Claims Dismissed Based on Existence of Probable Cause**

Mangum also brings § 1983 claims (against all individual defendants, and, based on a

*Monell* theory, against DA Vance) based on a claim of malicious prosecution.  These claims fail

for a separate reason – the undisputed facts support probable cause, thereby, as a matter of law,

justifying Mangum's prosecution.

**1.      Malicious Prosecution**

To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish the

elements of a malicious prosecution claim under New York law, plus a violation of his Fourth

Amendment rights.  *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010).

Accordingly, the plaintiff must show that: (1) the defendant commenced or continued a criminal

proceeding against the plaintiff; (2) the proceeding was terminated in the plaintiff's favor; (3)

there was no probable cause for commencing the proceeding; (4) the proceeding was instituted

with "actual malice"; and (5) there was a post-arraignment restraint on the defendant's liberty

sufficient to implicate his Fourth Amendment rights.  *McKay v. City of New York*, 32 F. Supp. 3d

499, 511 (S.D.N.Y. 2014) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir.

2000) (internal quotation marks omitted)); *accord Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007).

Defendants here argue that the Amended Complaint fails to plausibly plead the third element: the absence of probable cause. City Br. at 11; Vance Br. at 16. Defendants are correct. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted). In this case, it is undisputed that a gun was found in Mangum's backpack and that narcotics were found on his person. And, as the Amended Complaint acknowledges, the grand jury that returned gun and drug possession charges did so on the basis of this evidence. Am. Compl. ¶¶ 37, 44, 45. This evidence clearly supplied probable cause for the charges upon which Magnum was prosecuted.

The Amended Complaint does not dispute this. Instead, it pleads, and Mangum argues, that the evidence seized from his backpack and person must be disregarded in determining whether there was probable cause, because it was seized pursuant to – and was "a direct and proximate" fruit of – an unjustified warrantless search, in violation of the Fourth Amendment. Am. Compl. ¶¶ 82–83, 93–94.

The Second Circuit, however, has squarely rejected the theory that evidence that is a "fruit of the poisonous tree" so as to warrant suppression in a criminal trial must be excluded for purposes of assessing probable cause in a civil § 1983 action. In *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), the Circuit pointedly distinguished these contexts. It held that "the fruit of the poisonous tree doctrine" is an evidentiary doctrine "inapplicable to civil § 1983 actions." *Id.* at 145. In the context of a § 1983 claim, the Circuit explained, the probable cause inquiry, far from disregarding evidence that the exclusionary rule would eliminate, considers *all*

"facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). As the Circuit explained, the purpose of the exclusionary rule in criminal cases is to deter future police misconduct, whereas "[t]he 'basic purpose' of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Townes*, 176 F.3d at 147 (internal quotation marks omitted). And, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Id.* at 148. Accordingly, the Circuit held, "[t]he fruit of the poisonous tree doctrine is *not* available," and may not be used by a § 1983 plaintiff to exclude evidence supportive of probable cause or on which a grand jury's probable cause determination was made. *Id.* at 146 (emphasis added).[4]

Mangum's § 1983 claim of malicious prosecution thus fails to state a claim, because the charges against him were supported by probable cause.[5]

---

[4] This is not a case in which a civil plaintiff has claimed that a defendant official fabricated the substantive evidence of guilt on which a probable cause finding was made. Upon a proper such pleading, the allegedly fabricated evidence could be put aside in determining whether a claim of malicious prosecution against that official had been adequately pled. *See Townes*, 176 F.3d at 147; *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007); *Zahrey v. Coffey*, 221 F.3d 342, 351 (2d Cir. 2000); *White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988).

[5] The *Townes* doctrine does not, of course, prevent a plaintiff who was the subject of an unlawful stop and search from bringing claims based on that illegality, even if its fruits are properly considered to the extent a false arrest or malicious prosecution claim is brought. And a plaintiff who brings a claim of false arrest may pursue damages for his arrest "limited to the period between the arrest and the acquisition of probable cause." *Jenkins v. New York City Police Dep't*, No. 13 CIV. 3405 KPF, 2015 WL 4660899, at *4 (S.D.N.Y. Aug. 6, 2015). Here, however, any claim that Mangum may have had as to the stop and other events in January 2012 is time-barred, as the Court has explained.

### 2.    *Monell* claims based on DANY conduct

The Amended Complaint also brings a *Monell* claim against DA Vance based on the

DANY's conduct in pursuing the allegedly malicious prosecution.  It alleges that DA Vance

failed to properly hire, train, and supervise ADAs; adopt policies, procedures, or standards; and

investigate prior claims of similar illegalities.  Am. Compl. ¶¶ 122–44.  For the same reasons that

Mangum's *Monell* claim against the City based on police misconduct fails to state a claim, the

*Monell* claim against DA Vance also fails.  Even assuming that the Amended Complaint

adequately pled the existence of unlawful custom or policy with regard to bringing malicious

prosecutions – and the Court is skeptical that it does – Mangum lacks standing to pursue such a

*Monell* claim, because his own § 1983 claim of a malicious prosecution fails to state a claim.

The Court, therefore, dismisses this *Monell* claim, too.

### C.    Other Federal Claims

The Amended Complaint brings four other federal claims, all under § 1983.  Each is

clearly deficient.

### 1.    Conspiracy

To prove a conspiracy under § 1983, a plaintiff must show "(1) an agreement between

two or more state actors or between a state actor and a private entity; (2) to act in concert to

inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  The Amended Complaint,

however, fails to allege any concrete facts which could plausibly support a claim for conspiracy,

beyond the conclusory statements that Defendants "conspired . . . to maliciously initiate legal

process and prosecute Plaintiff and otherwise violate his civil rights."  Am. Compl. ¶¶ 78, 89.

### 2.    Equal Protection

To prove an equal protection violation under § 1983, a plaintiff must prove "(1) [that he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). The Amended Complaint, however, does not plead any facts supporting such a claim. The only allegation even referencing such a classification is the allegation that Officers Arslanbeck and Porras, in stopping Mangum, targeted him on account of his race. *See* Am. Compl. ¶ 29. That conclusory allegation, however, is insufficient to plead an equal protection violation. In any event, as addressed above, § 1983 claims arising out of the January 2012 stop are time-barred.

### 3.    Failure to *Mirandize*

The Amended Complaint alleges that Officers Arslanbeck and Porras, and ADA Conner, interrogated Mangum without first advising him of his rights, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Am. Compl. ¶ 80. However, "*Miranda* violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983." *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003); *see also Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). As the Second Circuit explained in *Jocks*, "[t]he appropriate remedy for violations of *Miranda* rights is exclusion of the evidence at trial," rather than damages in a § 1983 lawsuit. 316 F.3d at 138. Mangum's § 1983 claim based on a failure to *Mirandize* therefore fails to state a claim.

### 4.    Failure to Intervene

An officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation. *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."), *cert. denied*, 135 S. Ct. 2843 (2015).  In addition, "for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Here, the Amended Complaint's § 1983 claim for failure to intervene, *see* Am. Compl. ¶¶ 146–51, is deficient for at least two reasons.  First, as reviewed above, the Amended Complaint does not plead any viable constitutional claim.  Second, it does not plead, except in wholly conclusory fashion, any facts supporting a failure to intervene by any defendant official.

### D.    Mangum's Claims Under State Law

Having dismissed all of Mangum's federal claims under § 1983, the Court must next determine whether to exercise supplemental jurisdiction over Mangum's state-law claims. Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see Klein & Co. Futures, Inc. v. Bd. of Trade of New York*, 464

F.3d 255, 263 (2d Cir. 2006), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed, the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *Id.* (citing *Carnegie–Mellon*, 484 U.S. at 350 n.7).

Here, the Court resolves several of Mangum's state-law claims, because these claims are either wholly derivative of a dismissed federal claim, or otherwise so easily held deficient, that judicial economy counsels in favor of dismissal at this stage.  Specifically:

*False arrest and false imprisonment:*  Under New York law, "a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution." *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985); *see also Feinberg v. Saks & Co.*, 443 N.Y.S.2d 26, 28 (1981), *modified*, 56 N.Y.2d 206 (1982).  Thus, as with the § 1983 claim of malicious prosecution, the existence of probable cause on the charges of gun and drug possession, based on the physical evidence seized from Mangum's backpack and gun, requires dismissal of these state-law claims.

*Assault and battery:*  Under New York law, the statute of limitations for tort claims against the City and its employees, including claims for assault and battery against NYPD

officers, is one year and 90 days. *See* N.Y. Gen Mun. L. § 50-i(1)(c). Mangum's claim of assault and battery, brought against Officers Arslanbeck and Porras, is based on the events of January 26, 2012. Am. Compl. ¶ 159. Mangum was required, therefore, to bring any such claims by April 26, 2013. His claims here, brought more than two years later, are therefore untimely.

As to the remaining state-law claims, no circumstances counsel in favor of exercising supplemental jurisdiction. The Court's supervision of this case has entailed little more than resolving this motion to dismiss. The Court has not invested the resources necessary to fully familiarize itself with these claims, let alone to resolve them. Nor do convenience, fairness, or comity counsel in favor of retaining jurisdiction. The Court accordingly declines to exercise supplemental jurisdiction over these claims. Mangum's remaining state-law claims for violation of the New York Constitution, negligent screening, hiring, training, supervision, and retention of DANY employees, negligence, failure to protect, and prima facie tort are therefore dismissed without prejudice. Mangum is at liberty to re-file those claims in state court.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the Amended Complaint are granted.

The Clerk of Court is respectfully directed to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: September 2, 2016
New York, New York